Citation Nr: 1602932 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 11-03 626 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for asthma, to include as secondary to service-connected sinusitis with allergic rhinitis.

2. Entitlement to a disability rating in excess of 10 percent for a cervical spine disability. 


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

The Veteran




ATTORNEY FOR THE BOARD

A-L Evans, Associate Counsel


INTRODUCTION

The Veteran served on active duty from February 1973 to January 1976 and from November 1983 to January 1996. 

This matter is before the Board of Veterans' Appeals (Board) on appeal of a September 2010 rating decision of the Houston, Texas, Regional Office (RO) of the Department of Veterans Affairs (VA).

Subsequently, in a December 2010 rating decision, the RO increased the Veteran's service-connected cervical spine disability rating. The RO assigned a 10 percent rating, effective September 29, 2009, which is the date the RO received the Veteran's increased rating claim. 

The Veteran appeared at a hearing before the undersigned Veterans Law Judge in March 2015.

In June 2015, the Board reopened a previously denied claim of service connection for a lumbar spine disability. At that time, the Board also remanded the case for further development.

In a subsequent November 2015 rating decision, the RO granted service connection for a lumbar spine disability. As that issue on appeal was granted, it is no longer on appeal before the Board. See generally Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997); Barrera v. Gober, 122 F.3d 1030 (Fed. Cir. 1997).



FINDINGS OF FACT

1. The Veteran's current asthma was not present in service or until many years thereafter, and is not related to service or a service-connected disability.

2. The Veteran's cervical spine disability was manifested by diminished range of motion consisting of flexion greater than 30 degrees and a combined range of motion greater than 170 degrees, with no any ankylosis or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour.


CONCLUSIONS OF LAW

1. The criteria for service connection for asthma, on a direct or secondary basis have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2015).

2. The criteria for a rating in excess of 10 percent for a cervical spine disability have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.71a, Diagnostic Code 5235-5243 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to provide notice of the information and evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2014).

A standard October 2009 letter satisfied the duty to notify provisions regarding his claim for service connection. Although the complete notice was not provided for his claim for an increased rating for cervical spine, that claim was taken up in conjunction with a claim for an increased rating for lumbar spine, which had adequate notice. In any case, the Board notes that the Veteran is represented by a state veterans service representative who has shown actual knowledge of what is needed to substantiate the Veteran's entitlement to the benefits, per the March 2015 Board hearing, and the Veteran's claim has been readjudicated, most recently, in a November 2015 supplemental statement of the case.

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c).

The Veteran's service treatment records have been obtained. Post-service VA and private treatment records have also been obtained. Pursuant to the Board's June 2015 remand, the Veteran was asked to identify relevant treatment providers and additional private treatment records and opinion were obtained.

The Veteran was provided VA medical examinations in June 2010 and August 2015 regarding the issues adjudicated by this decision, including pursuant to the Board's June 2015 remand. The examinations, along with the expert medical opinions, are sufficient evidence for deciding the claim. The reports are adequate as they are based upon consideration of the Veteran's prior medical history and examinations, describe the disabilities in sufficient detail so that the Board's evaluation is a fully informed one, and contain reasoned explanations. Thus, VA's duty to assist has been met.

II. Analysis

A. Service Connection Claim

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303 (2015). "To establish a right to compensation for a present disability, a veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"-the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

In addition to the elements of direct service connection, service connection may also be granted on a secondary basis for a disability if it is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310 (2015. Establishing service connection on a secondary basis requires evidence sufficient to show that a current disability exists and that the current disability was either proximately caused by or proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995).

The Veteran seeks service connection for asthma, to include as secondary to service-connected sinusitis with allergic rhinitis.

Service treatment records do not reflect any complaints or findings of asthma. The Veteran's December 1975 and October 1995 report of medical examinations show a clinically normal evaluation of the Veteran's lungs and chest. A service treatment record dated in October 1981 shows that the Veteran was diagnosed with sinusitis. A July 1993 treatment note shows a diagnosis of sinusitis and allergic rhinitis. 

Notably, shortly after the Veteran's second period of service, he underwent VA examination in November 1996 in connection with multiple claims. Although sinusitis was identified, review of the respiratory system did not reveal asthma, and asthma was not reported by the Veteran.

Post-service private treatment records dated in June 2003 shows that the Veteran was diagnosed with asthma. A November 2006 private treatment note indicates that the Veteran was taking medication for asthma. A November 2009 private treatment record shows a diagnosis of asthma.

At the Veteran's March 2015 Board hearing, he noted that his asthma began in service. He also noted that he was treated for sinusitis and rhinitis in service and noted a progression of his asthma and sinusitis and rhinitis disabilities since service. He reported periodic pains in his chest, which, he stated, were asthma attacks. 

A respiratory condition disability benefits questionnaire dated in May 2015 shows that the Veteran was diagnosed with asthma. His condition was described as persistent and nonprogressive. It was noted that the Veteran used inhaled medications on a daily basis. Moderate asthma exacerbations were noted within the last year. Upon examination, the pre-bronchodilator measurement for FEV-1 was 73% predicted. The Veteran's FEC-1/FVC measured as 85%. 

A private medical note dated in June 2015 from Dr. Powell notes that the Veteran was assessed with extrinsic asthma, unspecified. It was noted that the Veteran was taking medication for his condition. The examiner noted that the Veteran's reported symptoms were present while in service and that he was treated for rhinitis/sinusitis. He opined that it was more likely than not that this upper respiratory abnormality most likely was triggered by allergies and was a part of his underlying asthma. 

A July 2015 medical record from the same private examiner, Dr. Powell, indicates that he opined that by the Veteran's history, environmental exposures during military service could certainly have played a role in his development of adult asthma. 

The Veteran was afforded a VA respiratory examination in August 2015. He reported being diagnosed with asthma around 1998. He noted that his current asthma condition was controlled by daily inhalation treatment and medication. No severe exacerbation due to his condition was reported. He noted having allergies to mold and pollens. A review of pulmonary function tests from April 2015 showed the pre-bronchodilator measurement for FEV-1 as 73% predicted and FEC-1/FVC measurement as 85%. No respiratory failure within the last 12 months was reported. 

The VA examiner opined that the Veteran's asthma was less likely than not incurred in or caused by the claimed in-service injury, event or illness. The VA examiner stated that there was no diagnosis of asthma in the Veteran's service treatment records or on his separation evaluation from service, where his lung examination was normal. A VA disability examination dated in November 1996 showed a normal lung examination with no cough, no shortness of breath, no expectoration and he was "able to run 2 miles without any major difficulty." There was no objective evidence of asthma during military service or 10 months after his retirement. His asthma developed after service and there is no evidence that any event or injury during service caused him to develop asthma. 

The VA examiner also opined that it was less likely than not that the Veteran's asthma was proximately due to his service-connected sinusitis with allergic rhinitis. The VA examiner stated that there was no evidence of the Veteran having asthma while in service. Although he had allergic rhinitis and sinusitis while in service, there was no objective evidence that these disorders led to his current asthma. He noted that the Veteran's allergic rhinitis and sinusitis have greatly improved, but that his asthma has persisted, indicating that separate forces were acting on the disorders. The VA examiner stated that it was well established that people develop asthma that do not have allergies or sinusitis. He referenced an up-to-date (2/12/2015) on-line web-based medical resource section on asthma which noted that "Asthma is a condition that likely resulted from complex interactions between multiple environmental and genetic influence. Numerous risk factors for asthma had been identified. The best studied risk factor, including gender, airway hyperactivity, atopy, allergens, infections, tobacco smoke, obesity, and perinatal factor, were discussed in the topic review." He noted that it was also established that the vast majority of people with allergies or sinusitis did not go on to develop asthma.

The VA examiner further opined that the Veteran's asthma was not at least as likely as not aggravated beyond its natural progression by his service-connected sinusitis with allergic rhinitis. He stated that the Veteran did not develop asthma until the late 1990's after military discharge. The Veteran continued treatment for many years and it was currently well controlled. It was noted that the Veteran required medication; however, by his own acknowledgement, his sinusitis and rhinitis had improved greatly over the last few years and he was not being treated for the disorders at that time. Additionally, his allergic rhinitis had not been so severe as to ever require immunotherapy (allergy shots) even though he was found to have mold and pollen allergies many years ago by an allergist. So, he had mild allergic rhinitis which was currently asymptomatic on no medications and no sinusitis recently but yet his asthma persisted. For those reasons, it was very unlikely that the Veteran's service-connected sinusitis with allergic rhinitis had aggravated his asthma. 

Given the evidence of record, the Board finds that in the absence of a relative balance of medical evidence or probative lay evidence linking the Veteran's asthma to service or to a service-connected disability, service connection for asthma, to include as secondary to service-connected sinusitis with allergic rhinitis, is not warranted.

The Board has weighed all the evidence of record, including the opinions offered by Dr. Powell and finds that the most probative medical evidence does not provide a nexus in this case either to service or service-connected disability. The Board finds that the opinions from Dr. Powell are less persuasive than the opinions provided by the August 2015 VA examiner. Dr. Powell's opinion included little to no rationale, particularly in the context of the record. Further, his July 2015 opinion is too vague and speculative upon which to base a grant of service connection. It has been held that the use of such equivocal language makes a statement by an examiner speculative in nature. See Bostain v. West, 11 Vet. App. 124, 127-28 (quoting Obert v. Brown, 5 Vet. App. 30, 33 (1993)). It is well established that medical opinions that are speculative, general, or inconclusive in nature do not provide a sufficient basis upon which to support a claim. McLendon v. Nicholson, 20 Vet. App. 79, 85 (2006).

In this regard, the Board notes that the opinion of the August 2015 VA examiner regarding the nature and etiology, and the causation and aggravation, of the Veteran's asthma constitutes the most probative evidence in this matter. It was based in large part upon a comprehensive review of the claims file and examination of the Veteran, provided an adequate rationale, and explained the medical factors involved. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008). 

The Veteran is certainly competent, as a lay person, to report symptoms of which he has personal knowledge, such as respiratory pain, and the Board finds his account credible. Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, as a lay person he is not competent to establish a medical diagnosis or show a medical etiology merely by his own assertions as such matters require medical expertise. See 38 C.F.R. § 3.159(a)(1) (2015). The specific issue in this case, the relationship between the Veteran's asthma and his military service and service-connected disability is a complex medical issue and thus is outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). This particularly so, given that there are other respiratory disabilities involved-allergic rhinitis and sinusitis-that may have similar symptoms. As a lay person, he does not have the education, training and experience to offer a medical diagnosis or an opinion as to the onset or etiology of this condition. See Kahana v. Shinseki, 24 Vet. App. 428 (2011). 

In light of the foregoing, the Board finds that the preponderance of the evidence is against the Veteran's claim of service connection for asthma, because the persuasive medical evidence shows that the condition did not have its onset during active service and is not otherwise related to military service. The persuasive medical evidence further shows that the asthma is neither caused nor aggravated by the service-connected sinusitis with allergic rhinitis. As such, the benefit-of-the-doubt doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. Therefore, service connection for asthma on a direct or secondary basis is also not warranted. 

B. Increased Rating Claim

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found-a practice known as "staged" ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination and endurance. The functional loss may be due to absence of part or all of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as disabled. See DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. § 4.40 (2015); see also 38 C.F.R. §§ 4.45, 4.59 (2015). Although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011); cf. Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995); Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1991). 

Disabilities of the spine are rated under the General Rating Formula for Diseases and Injuries of the Spine (for Diagnostic Codes 5235 to 5243, unless 5243 is evaluated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes). Ratings under the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula) are made with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area 
of the spine affected by residuals of injury or disease. 

The Veteran's cervical spine disability is evaluated as 10 percent disabling under Diagnostic Code 5237. A 20 percent disability rating is warranted for forward flexion of the cervical spine greater than 15 degrees but no greater than 30 degrees; or, a combined range of motion of the cervical spine no greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 30 percent disability rating is appropriate for forward flexion of the cervical spine to 15 degrees or less; or, favorable ankylosis of the entire cervical spine. A 40 percent disability rating is warranted for unfavorable ankylosis of the entire cervical spine. A 100 percent disability rating is assigned where there is unfavorable ankylosis of the entire spine.

The General Rating Formula also provides at Note (1) that any associated objective neurologic abnormalities should be rated separately under an appropriate diagnostic code. 

Note (2) provides that, for VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. See Plate V, 38 C.F.R. § 4.71a. 

Diagnostic Code 5243 provides that intervertebral disc syndrome (IVDS) is to be rated either under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes (IVDS Formula), whichever method results in the higher rating when all disabilities are combined under 38 C.F.R. § 4.25. 

The IVDS Formula provides a 10 percent disability rating for IVDS with incapacitating episodes having a total duration of at least 1 week but less than 2 weeks during the past 12 months; a 20 percent disability rating for IVDS with incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months; a 40 percent disability rating for IVDS with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months; and a 60 percent disability rating for IVDS with incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. 38 C.F.R. § 4.71a.

Note (1) to Diagnostic Code 5243 provides that an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 

The Veteran was afforded a VA spine examination in June 2010. He reported pain in the posterior of his neck. No radiating pain was noted. Flare-ups were not reported. Upon examination, the Veteran's cervical spine range of motion for forward flexion was to 45 degrees. The Veteran's range of motion for cervical extension was to 35 degrees. The Veteran's left and right lateral flexions were to 35 degrees, each. His left and right lateral rotations were to 80 degrees, each. No objective evidence of pain or additional limitations were found on repetitive motion. The Veteran's posture, head position and symmetry in appearance were normal. Cervical spine ankylosis was not found. X-rays of the cervical spine demonstrated moderate degenerative disc disease. 

At the Veteran's March 2015 Board hearing, he stated that his neck was irritated and inflamed all the time. He noted that he experienced a sharp, constant pain in his neck. 

The Veteran was afforded a VA neck examination in August 2015. He reported experiencing stiffness in his neck, which was worse in cold weather. He also noted a "little burning spot" in the lower lateral cervical area which he stated had been felt for the past 20 years. No radiating pain, paresthesias or numbness to the upper extremities were reported. No associated bowel or bladder dysfunction was noted. The Veteran reported sporadic flare-ups which occurred once per month. The flare-ups were associated with physical labor and would last for "a few days." Stiffness and a sharp, burning pain were reported during this period. No functional loss or periods of incapacitation were reported during flare-ups. 

Upon examination, the Veteran's cervical spine range of motion for forward flexion was to 45 degrees. The Veteran's range of motion for cervical extension was to 40 degrees. The Veteran's left and right lateral flexions were to 15 degrees, each. His left and right lateral rotations were to 55 degrees, each. Pain and functional loss were not noted upon movement. Mild, localized tenderness was found. Pain, weakness, fatigability and incoordination were not found upon examination. Muscle spasms and guarding were not found. Ankylosis was not found. No neurological abnormalities or IVDS and episodes requiring bed rest were found. 

The Veteran's neck disability is rated as 10 percent disabling. In order for a higher 20 percent rating to be assigned there must be forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees, or combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A review of the record, finds that the Veteran's forward flexion has been no worse than 45 degrees. Further, the combined range of motion of the cervical spine was, at worst, 225 degrees. No additional limitation of motion after repetitive use has been found. While localized tenderness has been reported, no evidence of muscle spasms or guarding that has resulted in an abnormal gait or abnormal spinal contour have been reported. The objective medical evidence is the most persuasive indication of functional loss and here it reflects findings falling squarely within the requirements for a 10 percent evaluation.

Further, the evidence is found to be appropriately contemplated in the 10 percent evaluation even when considering the Veteran's symptoms or impairments of stiffness and pain. See Deluca, 8 Vet. App. at 202.

The Board has also considered whether a higher rating could be assigned based on incapacitating episodes of intervertebral disc disease. The Veteran does not claim and the evidence of record does not show that the Veteran suffered from incapacitating episodes due to intervertebral disc syndrome involving the cervical spine which required bed rest prescribed by a physician and treatment by a physician. As such, a higher rating is not warranted based on incapacitating episodes. See 38 C.F.R. § 4.71a, Diagnostic Code 5243.

Additionally, the Board has considered whether the Veteran has neurological manifestations of the cervical spine that may be separately rated under an appropriate diagnostic code. On VA examinations, no neurological manifestations due to the cervical spine disability were noted or alleged. As such, separate ratings for any other neurological manifestations of the neck disability are not warranted at any time.

Next, the Board finds that the rating criteria considered reasonably describes the Veteran's disability level and his symptoms. The Veteran has noted pain and stiffness. To the extent a type of effect is not listed in the rating criteria, it is the underlying symptom that results in the effect of the disability. Thus, the Veteran's disability picture is contemplated by the rating schedule, the assigned schedular evaluation for the service-connected cervical spine disability is adequate, and referral for extraschedular consideration is not required. Thun v. Peake, 22 Vet. App. 111 (2008); 38 C.F.R. § 3.321(b)(1) (2015).

The Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual condition fails to capture all the service-connected disabilities experienced. However, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple service-connected conditions. Thus, no basis for referring the case for an extraschedular consideration is presented in this case.

For the foregoing reasons, the Board finds that the claim for a rating in excess of 10 percent for cervical spine disability must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim for increase, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Service connection for asthma, to include on a secondary basis, is denied.

A disability rating in excess of 10 percent for a cervical spine disability is denied. 




____________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs